1  Timothy G. Scanlon, Esq. (SBN 190563)
2  SCANLON DUNCAN LLP
   P.O. Box 10359
3  Bakersfield, California 93389-0359
   (661) 404-5028
4  tim@scanlonduncan.com

5  Attorneys for Plaintiff,
   SIERRA CONSTRUCTION &
6  EXCAVATION, INC.

7

8                    **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

10

11 | SIERRA CONSTRUCTION &          | Case No.
12 | EXCAVATION, INC., a California  |
   | corporation,                   | **COMPLAINT FOR RECOVERY UNDER**
13 |                                | **MILLER ACT PAYMENT BOND**
   |         Plaintiff,             |
14 |                                |
   | vs.                            |
15 |                                |
   | ARGONAUT INSURANCE COMPANY,    |
16 | an Illinois corporation; and   |
   | DOES 1 through 50, inclusive,  |
17 |                                |
   |         Defendants.            |
18
19

20      Plaintiff, SIERRA CONSTRUCTION & EXCAVATION, INC., a California corporation,

21 alleges as follows:

22                              **JURISDICTION**

23      1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the

24 provisions of the Miller Act, 40 U.S.C. § 3133(b)(3)(B).  The Court has pendent jurisdiction and

25 supplemental jurisdiction over any state law claims alleged in the Complaint pursuant to 28

26 U.S.C. § 1367.

27 ///

28 ///

**VENUE**

2.      The contract was performed in Kern County, California.  Venue therefore lies in the United States District Court for the Eastern District of California pursuant to 40 U.S.C. § 3133(b)(3)(B) and 28 U.S.C. § 1391(b)(2).

**PARTIES**

3.      Plaintiff, SIERRA CONSTRUCTION & EXCAVATION, INC. ("PLAINTIFF"), is a California corporation organized and existing under the laws of the state of California, with its principal place of business in Bakersfield, California.  At all times mentioned herein, PLAINTIFF was a duly licensed Class A (general engineering) contractor, license no. 770738, through the California Department of Consumer Affairs, Contractors State License Board, and authorized to perform the acts and contracts alleged herein.

4.      PLAINTIFF is informed and believes, and thereon alleges, that defendant, ARGONAUT INSURANCE COMPANY ("SURETY"), is a corporation organized and existing under the laws of the state of Illinois and authorized to do business in the state of California as an admitted surety.

5.      PLAINTIFF is ignorant of the true names and capacities, whether individual, corporate, associated, or otherwise, of the defendants sued herein as DOES 1 through 50, inclusive, and sues these defendants by fictitious names.  PLAINTIFF will amend this Complaint to allege their true names and capacities when ascertained.

6.      PLAINTIFF is informed and believes, and thereon alleges, that SURETY, as well as each of the defendants sued as DOES 1 through 50, inclusive, are legally responsible in some manner for the happening and events referred to herein, and proximately caused damages to PLAINTIFF as alleged in this Complaint.

7.      At all timed mentioned herein, each of the defendants was the agent, employee, joint venture, partner, parent, subsidiary, sister company, representative, alter ego, or surety of the remaining defendants and was at all times acting within the scope of said agency, employment, joint-venture, partnership, affiliation, representation, alter ego capacity, or suretyship, and each defendant ratified and approved the actions of the remaining defendants.

2

8.      SURETY, and DOES 1 through 50, inclusive, unless referred to specifically, are referred to collectively as Defendants.

**GENERAL FACTUAL ALLEGATIONS**

9.      In or around 2021, and within the last two years, PLAINTIFF and Escobar Construction, entered into a Subcontract Agreement (the "Subcontract Agreement") to provide labor, equipment, materials and services to the Bakersfield National Cemetery Expansion Project located at 30338 East Bear Mountain Blvd, in the city of Arvin, county of Kern, state of California, Project No. 36C78620C0344 (hereinafter the "Project").  Attached hereto as **Exhibit "A"** is a true and correct copy of the Subcontract Agreement.

10.      Plaintiff is informed and believes, and thereon alleges, that on or about November 2, 2020, Escobar Construction, as principal, obtained one or more Miller Act Payment Bonds, including but not limited to Payment Bond No's. CMGP00003784 and/or CMGB00008391from SURETY in the penal sum of no less than $1,336,666 (the "Payment Bonds") as required by the Project.  Pursuant to the Payment Bonds, both Escobar Construction and SURETY are firmly bound to the United States of America in the penal sum of the Payment Bonds to make payment to all persons having a direct contractual relationship with Escobar Construction, including PLAINTIFF, who furnished labor, equipment, materials, or services in the prosecution of the work on the Project, in the event that Escobar Construction did not make prompt payment to such persons, including PLAINTIFF.

11.      Pursuant to the terms of the Subcontract Agreement, and between November 2021 and March 2022, PLAINTIFF furnished labor, equipment, materials, and services to the Project. The labor, equipment, materials, and services furnished to the Project were incorporated into the Project.   PLAINTIFF issued invoices to Escobar Construction for payment for the labor, equipment, materials, and services furnished to the Project.

12.      The invoices remain unpaid and are past due and owing for the labor, equipment, materials, and services furnished by PLAINTIFF to the Project.  Everything identified in the invoices was furnished at the instance and request of Escobar Construction.  PLAINTIFF has per-

/ / /

COMPLAINT FOR RECOVERY UNDER MILLER ACT PAYMENT BOND

formed all conditions, covenants, and promises required of it pursuant to the Subcontract Agreement.

13.    Under the terms of the Subcontract Agreement, there is still an outstanding principal balance due to PLAINTIFF in the sum of no less than $175,156.54, plus interest at the legal rate, and more than 90-days have passed since Escobar Construction's failure to pay.

14.    Defendants have failed and refused to pay the amounts remaining due to PLAINTIFF, despite demand, and PLAINTIFF has been damaged in the sum of no less than $175,156.54, plus interest at the legal rate.

15.    Pursuant to Section 10, subdivision (a) of the Subcontract Agreement, the prevailing party in any litigation is entitled to its attorneys' fees.

## **FIRST CAUSE OF ACTION**

### **RECOVERY ON MILLER ACT PAYMENT BOND**

#### **(As against Defendants SURETY and DOES 1 through 50)**

16.    PLAINTIFF repleads and realleges paragraphs 1 through 15, above, as if fully set forth in this Cause of Action herein.

17.    PLAINTIFF has performed all conditions, covenants, and promises required of it pursuant to the Subcontract Agreement.

18.    Escobar Construction has breached, and remains in breach, of its obligations to pay PLAINTIFF for the labor, equipment, materials, and services furnished by PLAINTIFF to the Project, and Escobar Construction has failed and refused to pay for the labor, equipment, materials, and services furnished by PLAINTIFF to the Project in the prosecution of its work pursuant to the Subcontract Agreement.

19.    As a direct and proximate consequence of Escobar Construction's breach, PLAINTIFF has suffered damages in the sum of no less than $175,156.54, plus interest at the legal rate.

20.    SURETY is obligated, pursuant to the Payment Bonds, to pay PLAINTIFF for the labor, equipment, materials, and services furnished by PLAINTIFF to the Project in the prosecution of its work pursuant to the Subcontract Agreement and for which Escobar

4

Construction failed to make payment.  Attached hereto as **Exhibit "B"** is a true and correct copy of the Payment Bond.

21.     SURETY has failed to fulfill its obligations under the Payment Bond to pay PLAINTIFF for the labor, equipment, materials, and services furnished by PLAINTIFF to the Project in the prosecution of its work.

22.     PLAINTIFF is entitled to payment from SURETY pursuant to the Miller Act, 40 U.S.C. § 3133, but despite demand, SURETY has not made payment on the Payment Bonds, and the sum of no less than $175,156.54, plus interest at the legal rate remains due.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for judgment as follows:

**FIRST CAUSE OF ACTION**

A.     Compensatory damages in a sum to be proven at trial, but in no event less than the principal sum of $175,156.54, plus interest;

B.     Costs of suit incurred herein;

C.     Reasonable attorneys' fees per contract and statute; and

D.     Such other and further relief as the Court may deem just and proper.

DATED:  November 8, 2022                          SCANLON DUNCAN LLP

                                                 By:     /TIMOTHY G. SCANLON/
                                                 TIMOTHY G. SCANLON
                                                 Attorneys for Plaintiff,
                                                 SIERRA CONSTRUCTION &
                                                 EXCAVATION, INC.

5

**EXHIBIT "A"**

SUBCONTRACT AGREEMENT



## SUBCONTRACT AGREEMENT
### CONTRACTS OF $100,000.00 OR LESS

between

| Name: | ESCOBAR CONSTRUCTION |
|---|---|
| Address: | 318 Avenue I # 140. |
| | Redondo Beach CA 90277 |
| Attn: | Ron Escobar |
| Phone: | 310.907.5400 |
| Fax: | 310.491.9512 |
| Email: | ron@escobarco.com |
| | (hereinafter "Contractor") |

and

| Name: | Sierra Construction & Excavation Inc. |
|---|---|
| Address: | 10417 Meacham Rd, |
| | Bakersfield, CA 93312 |
| Attn: | Cody Pruitt |
| Phone: | 661.588.5124 |
| Email: | codyp@sierracei.com |
| | (hereinafter "Subcontractor") |

Project is: _Bakersfield National Cemetery Expansion_     Located at: 30338 East Bear Mountain Blvd, Arvin, CA.93203

Date of Prime Contract: _11/01/2020_     Contract No._36C78620C0344-MARINA

Owner: National Cemetery Administration

Contractor and Subcontractor agree as set forth below:

- The Subcontract Documents consist of this Subcontract Agreement, the attached Subcontract Terms and Conditions, and the following Attachments:

  o **Exhibit "A"- Scope of Work**

  o **Exhibit "B"- Insurance Requirements**

  o **Exhibit "C"- Project Specific Requirements (Including Wage Requirements)**

- Subcontractor shall execute the following Scope of Work in accordance with the Subcontract Documents:

Furnish all labor, material, equipment and supervision necessary to perform all work identified in Subcontractor's Proposal to Contractor and set forth in Exhibit A. Wages per current Employment Standards Administration Wage and Hour Determination applicable to the Project and Owner's requirements, including those, attached hereto as Exhibit "C".

(Scope of Work continues on Attachment "A___")

- Contractor shall pay Subcontractor for performance of the Work the Subcontract Sum of: **$166,950.00** subject to additions and deletions and retention as provided in the Subcontract Documents.
- Subcontractor shall □/shall not □ provide 100% Performance and Payment Bonds pursuant to the terms of the Subcontract Terms and Conditions.

Accepted, upon the terms and conditions above-stated.

Sierra Construction & Excavation Inc,     Subcontractor     ESCOBAR CONSTRUCTION,     Contractor

By: _Cody Pruitt_     By: _Ron Escobar_

Print Name, Title: Cody Pruitt     Treasurer     Print Name, Title: Ron Escobar     President

1

Initials

## SUBCONTRACT AGREEMENT

1. **CONTRACT DOCUMENTS**

   (a)   The term "Contract Documents" is defined to mean and include the prime or general contract between the Owner and Contractor, including all drawings and specifications, addenda, change orders, general and special or supplementary conditions and all other documents or attachments incorporated in the prime contract.

   (b)   Subcontractor certifies that it is fully familiar with all the terms of the Contract Documents, the location of the job site, and the conditions under which the work is to be performed and that it enters into this Subcontract based upon its investigation of all such matters and is not relying on any opinions or representations of Contractor. This Subcontract represents the entire agreement between the parties. The Contract Documents are incorporated in this Subcontract by reference, and Subcontractor and its subcontractors and any material suppliers will be and are bound by the Contract Documents insofar as they relate in any way, directly or indirectly, to the work covered by this Subcontract. Subcontractor agrees to be bound to Contractor in the same manner and to the same extent as Contractor is bound to Owner under the Contract Documents, to the extent of the work provided for in this Subcontract, and that where reference is made to Contractor in the Contract Documents, and the work or specifications therein pertains to Subcontractor's trade, craft, or type of work, then such work or specification shall be interpreted to apply to Subcontractor instead of Contractor. Subcontractor agrees that it will provide this flow-down clause in any and all subcontracts it has with any subcontractors and/or material suppliers.

2. **TIMELY PROSECUTION OF THE WORK**

   Time is of the essence in this Agreement.  Subcontractor will mobilize within 72 hours of fax notice from Contractor, and followed the agreed upon Contractor Schedule.. Whenever it becomes apparent to Contractor that any activity completion date of Subcontractor may not be met, Subcontractor shall immediately, upon notice from Contractor, take some or all of the following actions at no additional cost to Contractor:

   1.   Increase manpower in such quantities as will substantially eliminate the backlog of work and put Subcontractor's Work back on schedule.

   2.   Increase the number of working hours per shift, shifts per working day, working days per week, or the amount of equipment, or any combination of the foregoing which will substantially eliminate the backlog of work and put Subcontractor's Work back on schedule.

   3.   Reschedule activities to achieve maximum potential concurrency of accomplishment of activities and put Subcontractor's Work back on schedule.

3. **WARRANTY**

   Subcontractor warrants to Owner, Architect and Contractor that all materials and equipment furnished shall be new unless otherwise specified and that all work under this subcontract shall be of good quality, free from faults and defects and in conformance with the Contract Documents. All work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The warranty provided in this Paragraph 5 shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Contract Documents.

   Subcontractor agrees to promptly make good without cost to the Owner or Contractor any and all defects due to faulty workmanship and/or materials which may appear within the guarantee or warranty period so established in the Contract Documents, and if no such period be stipulated in the Contract Documents, then such guarantees shall be for a period of one year from date of completion and acceptance of the Project by the Owner. Such warranty obligation of Subcontractor includes all costs to remove or correct work of Subcontractor or others not otherwise covered by said warranty in order to perform the warranty work. Receipt by Contractor of all guarantees, or warranties stipulated by the Contract Documents is required prior to processing Subcontractors final payment. This

Initials

## SUBCONTRACT AGREEMENT

warranty shall be in addition to all other warranties and remedies expressed or implied, under the law or the Contract Documents.

**4.**    **CHANGES IN THE WORK**

(a)    Subcontractor shall make no changes in the work nor shall it be entitled to any additional compensation unless first authorized in writing by Contractor. All change order requests must comply with the Contract Documents.

(b)    Subcontractor shall not perform any change order work directly for the Owner and all change order work shall be performed through Contractor.

**5.**    **PAYMENT**

(a)    Contractor agrees, in consideration of the full and complete performance of the work by the Subcontractor in accordance with the terms and provisions hereof, to payor cause to be paid to the Subcontractor the Subcontract Sum. No payment made under this Agreement shall operate as an acceptance of any portion of the Subcontractor's work or as an admission on the part of Contractor that this Agreement, or any part thereof, has been complied with in case the fact shall be otherwise. Acceptance of the work shall be made by the Owner in accordance with the provisions of the Prime Contract.

Subcontractor understands that all payments to Subcontractor will be made only from a special fund and a specific source, namely, from payments made by Owner from time to time to Contractor in respect of work performed by Subcontractor. Contractor shall make payments to Subcontractor within ten (10) days after receipt by Contractor of payment from Owner for the work of Subcontractor for which payment has been made (or within such shorter period as may be required by law). The Subcontract Sum may be increased or decreased if any changes are made in the work or if there is a change in this agreement. The amount of any increase or decrease in the Subcontract Sum as a result of changes in the work shall be equal to the amount approved by Owner for such changes in the work, less any amounts allowed to Contractor for Contractor's overhead, profit, bond premium, and work performed by Contractor or others in connection therewith. Subcontractor agrees to accept the amount approved by Owner for changes in the work as payment in full for any delay, disruptions or lost productivity arising out of the change in the work.

(b)    Contractor shall retain from progress or other payments hereunder ten percent (15%) of the amount due until after final acceptance of the work by the Architect and Owner and until ten (10) days after Contractor's receipt of final retention payment from Owner.

(c)    Prior to issuance of any payments from Contractor to Subcontractor, Subcontractor shall provide:

(1) Complete and Approved Submittals.

(2) A complete list, under penalty of perjury, identifying all material suppliers and subcontractors from which subcontractor will purchase materials or subcontract work for the project and the amount of each material purchase or subcontract.

(3) Unconditional Releases on the form attached hereto for labor and materials purchased the previous month.

(4) Conditional Releases on the form attached hereto for labor and materials purchased the current month.

(5) Insurance certificates for all lines of insurance required by the Prime Contract.

(6) Certified Payroll.

(d)    Any payment made hereunder prior to completion and acceptance of the work shall not be construed as evidence or acknowledgment of proper completion of any part of Subcontractor's work.

**6.**    **INSURANCE**

(a)    Subcontractor shall, at its own expense, procure insurance coverage with limits acceptable to Contractor and in accordance with Exhibit "B", but in no event less than $1,000,000 in Commercial General Liability coverage. Such insurance shall be maintained with insurers, policy forms and deductibles satisfactory to

3

Initials

## SUBCONTRACT AGREEMENT

Contractor and the Owner. If Subcontractor uses existing coverage to comply with these requirements and that coverage does not meet the requirements of Contractor, Subcontractor agrees to amend, supplement or endorse the existing coverage to do so, at no additional cost to Contractor. No insurance provided under this section shall contain "burning limits" provisions.

Subcontractor shall also be responsible for providing insurance for all its property, tools and equipment used on the site or away from the site.

(b)    Subcontractor will also carry any other insurance specified in the Contract Documents for protection of Owner, Contractor and Subcontractor, and will keep all policies and endorsements in force as long as may be necessary to protect any of the above. Any acceptance of insurance certificates or endorsements by Contractor shall in no way limit or relieve the Subcontractor of its duties and the responsibilities assumed by him in this agreement.

(c)    At minimum, Subcontractor shall carry Workers' Compensation, General Liability, and Automobile Insurance. Such General Liability coverage shall be endorsed to add the Owner and Contractor as additional insureds on the Subcontractor's policy for liabilities arising out of Subcontractor's work.

(d)    On execution of the Subcontract and prior to commencement of work, Subcontractor shall file on forms acceptable to Contractor a certificate of insurance and additional insured endorsement properly executed and signed by an authorized representative on behalf of the insurer(s) evidencing the above coverages and conditions as specified in the Insurance Appendix. Subcontractor shall maintain the required insurance and additional insureds for the period of time for which the Subcontractor may be held legally liable for its work. Also, the required certificates of insurance and additional insured endorsements shall be provided and maintained by the Subcontractor during the warranty period of Subcontractor's work. Subcontractor further agrees, upon written request by Contractor or Owner, to furnish copies of any insurance policies, certified by an authorized representative of the insurer(s).

(e)    Subcontractor shall be responsible for payment of the deductible for any Builder's Risk/Course of Construction Insurance ("Builder's Risk") claim regardless of whether such coverage is procured by the Owner, Contractor or Subcontractor. Subcontractor shall be responsible for payment of the deductible in proportion to its percentage of the entire loss (covered under the Builder's Risk Policy), as calculated prior to the application of the policy deductible.

(f)    All insurance requirements shall flow down to subcontractors and suppliers of any tier and any flow down of these requirements to such subcontractors and suppliers of any tier does not relieve Subcontractor of its obligation to provide the Insurance outlined herein.

(g)    All policies required under this Agreement shall contain a provision that coverages afforded under the policies will not be cancelled or not renewed until at least thirty (30) days' prior written notice has been given to Contractor. Regardless of policy provisions, Subcontractor is responsible for providing Contractor 30 days written notice of cancellation.

(h)    All policies required under this Agreement shall contain endorsements waiving all rights of subrogation in favor of Contractor and the Owner together with any other entities required by the Contract Documents where allowable by law.

CERTIFICATES OF INSURANCE EVIDENCING ALL COVERAGES REQUIRED HEREIN MUST BE PROVIDED TO AND APPROVED BY CONTRACTOR PRIOR TO COMMENCEMENT OF ANY WORK BY SUBCONTRACTOR.

(i)    To the fullest extent permitted by law, Subcontractor obligates itself to indemnify, defend (including attorney's fees) and hold Contractor harmless against any claims related to the adequacy and sufficiency of insurance identified in Paragraph 9.

(j)    Subcontractors General Liability policies as set forth in Section 9 of this agreement shall not be subject to the satisfaction of any Self-Insure Retention and shall not seek contribution for insurance and is to include

4

Initials

## SUBCONTRACT AGREEMENT

"ongoing operations" and "completed operations."

**7.    BONDS**

Performance and Payments Bonds May be needed under certain projects under $100,000 in cost. They will be discussed on a case by case basis and incorporated as part of this contract clause.

**8.    SAFETY**

(a)    Subcontractor shall comply fully with all laws, orders, citations, rules, regulations, standards and statutes with respect to occupational health and safety, the handling and storage of hazardous materials, accident prevention, safety equipment and practices including the accident prevention and safety program of Owner and Contractor, Subcontractor shall conduct inspections to determine that safe working conditions and equipment exist and accepts sole responsibility for providing a safe place to work for its employees and for employees of its subcontractors and suppliers of material and equipment, for adequacy of and required use of all safety equipment and for full compliance with the aforesaid laws, orders, citations, rules, standards and statutes.

(b)    To the fullest extent permitted by law, Subcontractor obligates itself to indemnify, defend (including attorney's fees) and hold Contractor harmless against any claims related to the adequacy and sufficiency of Subcontractor's safety program as identified in Paragraph 11.

**9.    CLAIMS AND DISPUTES**

(a)    Subcontractor shall, at its own expense, procure insurance coverage with limits acceptable to Contractor and in accordance with Exhibit "B", but in no event less than $1,000,000 in Commercial General Liability coverage. Such insurance shall be maintained with insurers, policy forms and deductibles satisfactory to Contractor and the Owner. If Subcontractor uses existing coverage to comply with these requirements and that coverage does not meet the requirements of Contractor, Subcontractor agrees to amend, supplement or endorse the existing coverage to do so, at no additional cost to Contractor.  No insurance provided under this section shall contain "burning limits" provisions.

Subcontractor shall also be responsible for providing insurance for all its property, tools and equipment used on the site or away from the site.

(b)    Subcontractor will also carry any other insurance specified in the Contract Documents for protection of Owner, Contractor and Subcontractor, and will keep all policies and endorsements in force as long as may be necessary to protect any of the above. Any acceptance of insurance certificates or endorsements by Contractor shall in no way limit or relieve the Subcontractor of its duties and the responsibilities assumed by him in this agreement.

(c)    At minimum, Subcontractor shall carry Workers' Compensation, General Liability, and Automobile Insurance. Such General Liability coverage shall be endorsed to add the Owner and Contractor as additional insureds on the Subcontractor's policy for liabilities arising out of Subcontractor's work.

(d)    On execution of the Subcontract and prior to commencement of work, Subcontractor shall file on forms acceptable to Contractor a certificate of insurance and additional insured endorsement properly executed and signed by an authorized representative on behalf of the insurer(s) evidencing the above coverages and conditions as specified in the Insurance Appendix. Subcontractor shall maintain the required insurance and additional insureds for the period of time for which the Subcontractor may be held legally liable for its work. Also, the required certificates of insurance and additional insured endorsements shall be provided and maintained by the Subcontractor during the warranty period of Subcontractor's work. Subcontractor further agrees, upon written request by Contractor or Owner, to furnish copies of any insurance policies, certified by an authorized representative of the insurer(s).

5

Initials

## SUBCONTRACT AGREEMENT

(e)   Subcontractor shall be responsible for payment of the deductible for any Builder's Risk/Course of Construction Insurance ("Builder's Risk") claim regardless of whether such coverage is procured by the Owner, Contractor or Subcontractor. Subcontractor shall be responsible for payment of the deductible in proportion to its percentage of the entire loss (covered under the Builder's Risk Policy), as calculated prior to the application of the policy deductible.

(f)   All insurance requirements shall flow down to subcontractors and suppliers of any tier and any flow down of these requirements to such subcontractors and suppliers of any tier does not relieve Subcontractor of its obligation to provide the Insurance outlined herein.

(g)   All policies required under this Agreement shall contain a provision that coverages afforded under the policies will not be cancelled or not renewed until at least thirty (30) days' prior written notice has been given to Contractor. Regardless of policy provisions, Subcontractor is responsible for providing Contractor 30 days written notice of cancellation.

(h)   All policies required under this Agreement shall contain endorsements waiving all rights of subrogation in favor of Contractor and the Owner together with any other entities required by the Contract Documents where allowable by law.

CERTIFICATES OF INSURANCE EVIDENCING ALL COVERAGES REQUIRED HEREIN MUST BE PROVIDED TO AND APPROVED BY CONTRACTOR PRIOR TO COMMENCEMENT OF ANY WORK BY SUBCONTRACTOR.

(ii)   To the fullest extent permitted by law, Subcontractor obligates itself to indemnify, defend (including attorney's fees) and hold Contractor harmless against any claims related to the adequacy and sufficiency of insurance identified in Paragraph 9.

(j)   Subcontractors General Liability policies as set forth in Section 9 of this agreement shall not be subject to the satisfaction of any Self-Insure Retention, and shall not seek contribution for insurance and is to include "ongoing operations" and "completed operations."

10.   **DISPUTE RESOLUTION PROCEDURE**

(a)   In the event of any dispute or claim between Contractor and Owner which directly or indirectly involves Subcontractor's Work, or in the event of any dispute or claim between Contractor and Subcontractor which directly or indirectly involves Subcontractor's Work, or in the event of any dispute or claim between Contractor and Subcontractor which directly or indirectly involves a claim against Owner for either additional compensation or an extension of time under the Contract Documents, Subcontractor agrees to be bound to Contractor and Contractor agrees to be bound to Subcontractor by all decisions, findings or determinations made by the person so authorized in the Contract Documents, by an administrative agency, court of competent jurisdiction, or arbitration panel, whether or not Subcontractor is a party to the proceedings before said person, agency, court or panel. If any dispute or claim is prosecuted or defended by Contractor, Subcontractor agrees to cooperate fully with Contractor and to furnish all documents, statements, witnesses and other information required by Contractor for such purpose and shall pay or reimburse Contractor for all expenses and costs, including reasonable attorney's fees, incurred in connection therewith to the extent of Subcontractor's interest in such claim or dispute. It is expressly understood and agreed in connection with the determination of such claims or disputes that, as to any and all work done and agreed to be done by Subcontractor, and as to any and all damages, if any, incurred by Subcontractor in connection with the Project, Contractor shall never be liable to Subcontractor to any greater extent than Owner is liable to Contractor. If a dispute between Contractor and Subcontractor is not subject to the dispute resolution procedure set forth in the Contract Documents, then the dispute resolution procedure set forth in paragraphs (b) and (e) below shall apply.

(b)   **MEDIATION**. Subcontractor agrees, upon the request of Contractor, to submit a dispute to a mediator and to negotiate in good faith to reach an agreement with respect to the dispute. In such event, neither party

6

Initials

## SUBCONTRACT AGREEMENT

shall proceed with arbitration or litigation until the completion of mediation proceedings. The costs of the mediator shall be shared equally by the parties.

(c)  **ELECTION OF ARBITRATION OR LITIGATION**. In the event of a dispute between Contractor and Subcontractor, Contractor may elect to arbitrate such dispute in the manner provided below, or to litigate the dispute in a forum with jurisdiction to decide the dispute. In the event of arbitration only one arbitrator shall hear the dispute. The award rendered by the arbitrator shall be final and judgment may be entered upon in accordance with applicable law in any court having jurisdiction. The prevailing party to any arbitration or litigation under this Paragraph shall be entitled to recover its reasonable attorney's fees.

(d)  **FEDERAL ARBITRATION ACT.** The arbitration rights set forth herein shall be specifically enforceable under the Federal Arbitration Act, 9 U.S.C. 1, et seq., the parties agreeing that the transactions contemplated hereunder will have an effect on interstate commerce.

11.  **MISCELLANEOUS PROVISIONS**

(a)  **TAXES**

The compensation payable to Subcontractor as herein provided includes all sales, gross receipts, excise and other taxes and is not subject to any addition on account of taxes which are now or may hereafter be levied. It is hereby agreed that Subcontractor is an independent contractor within the purview of the Internal Revenue Code, the Federal Social Security Act, and any and all unemployment insurance laws, both State and Federal, and is solely responsible to the Federal and State Government for all payroll taxes, deductions, and contributions under such laws.

(b)  **FAIR EMPLOYMENT AND AFFIRMATIVE ACTION**

The Subcontractor agrees to be bound by and comply with all applicable Fair Employment Practices, Provisions and Regulations of Federal, State or other Governmental authority having jurisdiction including the provisions of Executive Order No. 11246, and Title VII of the Civil Rights Act of 1964, including amendments or revisions thereof, relating to nondiscrimination in employment, and any affirmative action provisions (including MBE or WBE requirements) contained in the Contract Documents or required by applicable law.

(c)  **ENTIRE AGREEMENT**

This Subcontract is a fully integrated document. The Subcontract Documents represent the entire agreement between the parties and supersede any prior representation, statement or agreement, oral or written, with regard to the subject matter herein. No modification hereto shall be valid unless it is in writing and signed by both parties. This Subcontract Agreement has been mutually drafted by both parties.

(d)  **WAIVER**

Waiver by Contractor of any particular default by Subcontractor shall not affect or impair Contractor's rights in respect to any subsequent default of the same or of a different nature.

(e)  **SIGNATURES AND NOTICES**

This Agreement may be executed in counterparts. Facsimile and electronic signatures are permitted. All notices provided hereunder shall be in writing and mailed to the other party at the address stated in the Agreement.

(f)  **SEVERABILITY**

If any term of provision of this Agreement or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of the Agreement or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Subcontract shall be valid and be enforced to the fullest extent permitted by law.

(g)  **GOVERNING LAW AND VENUE**

7

Initials

DocuSign Envelope ID: 81409FDF-DCAA-4951-9    7ED7317FD630

## SUBCONTRACT AGREEMENT

This Agreement shall be construed and enforced in accordance with the laws of the State of California, and venue for any legal action shall be in California.

(h)    **DAILY REPORTS**

Subcontractor shall provide daily updates to Contractor via daily reports and shall maintain daily written reports of all work on the Project, including labor, equipment and percentages of completion of the work.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

8

Initials

### SUBCONTRACT AGREEMENT

### EXHIBIT A
### SCOPE OF WORK

Intsall Vertical Drains at Sections:

## Section 11
6" PVC Pipe (Labor Only) 106.00 LF $35.00 $3,710.00
4" PVC Pipe (Labor Only) 10.00 LF $41.00 $410.00
Vertical Drain (Labor Only) 497.00 LF $28.00 $13,916.00
Clean-Out (Labor Only) 3.00 EACH $890.00 $2,670.00
**Total Price for above Section 11 Items: $20,706.00**

## Section 16
6" PVC Pipe (Labor Only) 95.00 LF $35.00 $3,325.00
4" PVC Pipe (Labor Only) 48.00 LF $37.00 $1,776.00
Vertical Drain (Labor Only) 1,029.00 LF $28.00 $28,812.00
Clean-Out (Labor Only) 3.00 EACH $890.00 $2,670.00
**Total Price for above Section 16 Items: $36,583.00**

## Section 17
6" PVC Pipe (Labor Only) 137.00 LF $35.00 $4,795.00
4" PVC Pipe (Labor Only) 22.00 LF $37.00 $814.00
Vertical Drain (Labor Only) 930.00 LF $28.00 $26,040.00
Clean-Out (Labor Only) 3.00 EACH $890.00 $2,670.00
**Total Price for above Section 17 Items: $34,319.00**

## Section 18
6" PVC Pipe (Labor Only) 243.00 LF $35.00 $8,505.00
4" PVC Pipe (Labor Only) 21.00 LF $42.00 $882.00
Vertical Drain (Labor Only) 678.00 LF $28.00 $18,984.00
Clean-Out (Labor Only) 3.00 EACH $890.00 $2,670.00
**Total Price for above Section 18 Items: $31,041.00**

## Storm Main Line
18" HDPE Pipe (Labor Only) 293.00 LF $61.00 $17,873.00
12" HDPE Pipe (Labor Only) 148.00 LF $61.00 $9,028.00
Storm Riser Pipe (Labor Only) 1.00 EACH $4,570.00 $4,570.00
Standard Catch Basin 1.00 EACH $7,410.00 $7,410.00
18" & 12" Flared End Section (Labor Only) 2.00 EACH $2,710.00 $5,420.00
**Total Price for above Storm Main Line Items: $44,301.00**
8/31/2021 12:57:17 PM Page 1 of 2
**Total Bid Price: $166,950.00**
**Notes:**
• Unless otherwise noted pricing is labor only. All material to be provided by others.
• Unless otherwise stated this proposal includes one mobilization only
• Unless otherwise stated this proposal excludes any and all concrete or Asphalt repairs / place back.
• The above prices do not include Performance and Payment Bonds. If required additional fees will apply
• Unless otherwise noted no permits included . If required additional fees will apply
• Unless otherwise noted no payment of construction water included . If required additional fees will apply
• Unless otherwise noted no payment of compaction testing included. If required additional fees will apply
• Unless otherwise noted no payment of construction surveying included. If required additional fees will apply
• The above prices are based on plans and specs provided. Any revisions made to plans or scope after proposal has been accepted will result in cost impacts
• Required California Preliminary Lien Information (California Civil Code Section 3097/3098) to be provided.
• Any unusual conditions of subsoil encountered, such as buried slabs, underground piping, trash deposits, etc. shall be deemed cause for additional charges.
**Payment Terms:** Payment due within 30 days of date of invoice

| Task # | Task Name | Assigned Value | Previously Paid | Work Complete | Balanced Owed |
|---|---|---|---|---|---|
| 1 | Section 11 | $20,706.00 | $0.00 | 0% | $0.00 |
| 2 | Section 16 | $28,192.75 | $0.00 | 0% | $0.00 |
| 3 | Section 17 | $25,973.75 | $0.00 | 0% | $0.00 |
| 4 | Section 18 | $31,041.00 | $0.00 | 0% | $0.00 |
| 5 | Storm Main Line | $25,106.93 | $0.00 | 0% | $0.00 |
| 6 | Final Walk through | $10,848.83 | $0.00 | 0% | $0.00 |
| 7 | Retainage | $25,035.75 | $0.00 | 0% | $0.00 |
| | **TOTAL** | **$166,905.00** | **$0.00** | | **$0.00** |

1

Initials

SUBCONTRACT AGREEMENT

## EXHIBIT B

### SPECIFIC INSURANCE REQUIREMENTS

Worker's Compensation Insurance- Statutory

Commercial General Liability Insurance- $1 million primary/$2 million excess

Pollution Insurance- If Required by Client

Builder's Risk -If required by Client

Automobile Insurance-not less than $1 million combined single limit for each accident for bodily injury and property damage.

The COI should reflect the inclusion have the following Endorsements:

- CG 2001 - Primary and Noncontributory (EXHIBIT B1)
- CG 2010 - Additional Insured -- Scheduled Person or Organization (EXHIBIT B2)
- CG 2037 - Additional Insured -- Completed Operations (EXHIBIT B3)

2

Initials

**SUBCONTRACT AGREEMENT**

## EXHIBIT B1

**COMMERCIAL GENERAL LIABILITY**
**CG 20 01 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PRIMARY AND NONCONTRIBUTORY –
# OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

3

Initials

SUBCONTRACT AGREEMENT

## EXHIBIT B2

COMMERCIAL GENERAL LIABILITY
CG 20 10 07 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED — OWNERS, LESSEES OR CONTRACTORS — SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Any owner lessee or contractor to whom you have agreed in writing prior to a loss to provide liability insurance | Any location listed in such agreement |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed. or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 10 07 04                 © ISO Properties, Inc., 2004                 Page 1 of 1

4

Initials

## SUBCONTRACT AGREEMENT

# EXHIBIT B3

POLICY NUMBER:                                    COMMERCIAL GENERAL LIABILITY
                                                              CG 20 37 04 13

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| Any owner lessee or contractor to whom you have agreed in writing prior to a loss to provide liability insurance. | Any location listed in such agreement |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard",

However,

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

B. With respect to the insurance afforded to these additional insureds, the following is added to Section III – Limits Of Insurance:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 37 04 13                    © Insurance Services Office, Inc., 2012                    Page 1 of 1

5

Initials

## SUBCONTRACT AGREEMENT

### **EXHIBIT C**

### PROJECT SPECIFIC REQUIREMENTS

This project is a Prevailing Wage Project, and the following wage schedule applies.

The subcontractor is required to provide Certified Payroll Reports.

6

Initials

# EXHIBIT "B"

Bond No.: CMGP00003784  Premium: Included

| **PAYMENT BOND**<br>(See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract)<br><br>**11/02/2020** | **OMB Control Number: 9000-0045**<br>**Expiration Date: 8/31/2022** |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 1 hour to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) | | |
|---|---|---|---|
| **Los Angeles Apartment Corporation**<br>**dba. Escobar Construction**<br>**5651 W. Pico Blvd., #203**<br>**Los Angeles, CA 90019** | ☐ INDIVIDUAL   ☐ PARTNERSHIP   ☐ JOINT VENTURE<br><br>☒ CORPORATION   ☐ OTHER (Specify) | | |

| | STATE OF INCORPORATION<br>**CA** | | | |
|---|---|---|---|---|
| SURETY(IES) (Name(s) and business address(es))<br><br>**Argonaut Insurance Company**<br>**13100 Wortham Center Drive, Suite 290**<br>**Houston, TX 77065**<br><br>**Mailing Address:**<br>**P.O. Box 469011, San Antonio, TX 78246** | PENAL SUM OF BOND | | | |
| | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| | **001** | **336** | **666** | **00** |
| | CONTRACT DATE<br>**9/25/2020** | | CONTRACT NUMBER<br>**36C78620C0344** | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| PRINCIPAL | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1.<br>(Seal) | 2.<br>(Seal) | 3.<br>(Seal) | Corporate<br>Seal |
| NAME(S) &<br>TITLE(S)<br>(Typed) | 1. | 2. | 3. | |

| INDIVIDUAL SURETY(IES) | | | |
|---|---|---|---|
| SIGNATURE(S) | 1.<br>(Seal) | 2.<br>(Seal) | |
| NAME(S)<br>(Typed) | 1. | 2. | |

| | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|
| **SURETY A** | NAME &<br>ADDRESS | **Argonaut Insurance Company**<br>**13100 Wortham Center Drive, Ste. 290, Houston, TX 77065** | STATE OF INCORPORATION<br>**Illinois** | LIABILITY LIMIT<br>**$1,336,666.00** |
| | SIGNATURE(S) | 1. | 2. | Corporate<br>Seal |
| | NAME(S) &<br>TITLE(S)<br>(Typed) | 1. **Gabriella Grady, Attorney-in-fact** | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is NOT usable

STANDARD FORM 25A (REV. 8/2016)
Prescribed by GSA-FAR (48 CFR) 53.2228(c)

| | | CORPORATE SURETY(IES) *(Continued)* | | | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under 40 USC Chapter 31, Subchapter III, Bonds. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of the bond, unless a co-surety arrangement is proposed.

   (b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

   (c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**STANDARD FORM 25A** (REV. 8/2016) **BACK**

Bond No.: **CMGP00003784**

Premium: **$27,733.00**

# Argonaut Insurance Company
## Deliveries Only: 225 W. Washington, 24th Floor
## Chicago, IL 60606
## United States Postal Service: P.O. Box 469011, San Antonio, TX 78246
## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS: That the Argonaut Insurance Company, a Corporation duly organized and existing under the laws of the State of Illinois and having its principal office in the County of Cook, Illinois does hereby nominate, constitute and appoint:

Gabriella Grady, Shilo Lee Losino, Stephanie Hope Shear, Elizabeth Santos, Stacey Garcia, Matthew Dionisio

Their true and lawful agent(s) and attorney(s)-in-fact, each in their separate capacity if more than one is named above, to make, execute, seal and deliver for and on its behalf as surety, and as its act and deed any and all bonds, contracts, agreements of indemnity and other undertakings in suretyship provided, however, that the penal sum of any one such instrument executed hereunder shall not exceed the sum of:

$15,000,000.00

This Power of Attorney is granted and is signed and sealed under and by the authority of the following Resolution adopted by the Board of Directors of Argonaut Insurance Company:

"RESOLVED, That the President, Senior Vice President, Vice President, Assistant Vice President, Secretary, Treasurer and each of them hereby is authorized to execute powers of attorney, and such authority can be executed by use of facsimile signature, which may be attested or acknowledged by any officer or attorney, of the Company, qualifying the attorney or attorneys named in the given power of attorney, to execute in behalf of, and acknowledge as the act and deed of the Argonaut Insurance Company, all bond undertakings and contracts of suretyship, and to affix the corporate seal thereto."

IN WITNESS WHEREOF, Argonaut Insurance Company has caused its official seal to be hereunto affixed and these presents to be signed by its duly authorized officer on the 8th day of May, 2017.

Argonaut Insurance Company

by: _____

Joshua C. Betz , Senior Vice President

STATE OF TEXAS
COUNTY OF HARRIS  SS:

On this 8th day of May, 2017 A.D., before me, a Notary Public of the State of Texas, in and for the County of Harris, duly commissioned and qualified, came THE ABOVE OFFICER OF THE COMPANY, to me personally known to be the individual and officer described in, and who executed the preceding instrument, and he acknowledged the execution of same, and being by me duly sworn, deposed and said that he is the officer of the said Company aforesaid, and that the seal affixed to the preceding instrument is the Corporate Seal of said Company, and the said Corporate Seal and his signature as officer were duly affixed and subscribed to the said instrument by the authority and direction of the said corporation, and that Resolution adopted by the Board of Directors of said Company, referred to in the preceding instrument is now in force.

IN TESTIMONY WHEREOF, I have hereunto set my hand, and affixed my Official Seal at the County of Harris, the day and year first above written.

_____
(Notary Public)

I, the undersigned Officer of the Argonaut Insurance Company, Illinois Corporation, do hereby certify that the original POWER OF ATTORNEY of which the foregoing is a full, true and correct copy is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand, and affixed the Seal of said Company, on the **2nd** day of **November** , **2020** .

_____
James Bluzard , Vice President-Surety

IF YOU HAVE QUESTIONS ON AUTHENTICITY OF THIS DOCUMENT CALL (833) 820 - 9137.

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California            )

County of _____ Los Angeles _____ )

On ___ NOV 0 2 2020 ___ before me, ___ Lucas Malcolm-Shane Patterson, Notary Public ___,
       *Date*                        *Here Insert Name and Title of the Officer*

personally appeared _____ Gabriella Grady _____
                                         *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                   *Signature of Notary Public*

    *Place Notary Seal Above*

———————————— **OPTIONAL** ————————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| | |
|---|---|
| Signer's Name: _____ | Signer's Name: _____ |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual  ☐ Attorney in Fact | ☐ Individual  ☐ Attorney in Fact |
| ☐ Trustee  ☐ Guardian or Conservator | ☐ Trustee  ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907